## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

ELVIN DOWLING and
PEOPLE FOR ELVIN DOWLING,

      Plaintiffs,

v.                                  CASE NO. 9:21-cv-80796-AMC

RONALD DION DESANTIS, in his
official capacity as Governor of the State
of Florida,

      Defendant.

_____/

## DEFENDANT GOVERNOR DESANTIS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

At issue in this case is whether Governor DeSantis must schedule a special election to fill a vacancy in the U.S. House of Representatives within 153 days of the date of vacancy. Yes, Plaintiffs actually contend the Governor must fill the vacancy within specifically "153 days" and they base such argument not on any text of law but instead on the precedent of a prior vacancy. And thus, Plaintiffs claim the Governor's recently declared special primary election to occur 210 days after the date of the congressional vacancy and special general election to occur 280 days after the vacancy are unlawful. Under the Governor's ordered schedule, what would have been a 21-month vacancy will be filled for almost an entire year.

The Court should dismiss Plaintiffs' suit against the Governor under Federal Rules of Civil Procedure 12(b)(1) and (6) for four independent reasons: (1) their state

law and state constitutional claims are barred by the Eleventh Amendment; (2) they lack standing to bring this challenge; (3) they are asking this Court to decide a nonjusticiable question; and (4) they have failed to state a claim upon which relief can be granted.

## BACKGROUND

On April 6, 2021, 15-term Representative Alcee Lamar Hastings passed away after battling cancer for over two years. Over the course of his career as a Congressman, he served Florida's 23rd and 20th Congressional Districts. The 20th District, which he was serving at the time of his death, includes parts of West Palm Beach and Fort Lauderdale.

Representative Hastings was last elected to the U.S. House of Representatives on November 3, 2020. His term began on January 3, 2021, and runs until January 3, 2023. His death on April 6, 2021, created a vacancy that, unless filled, will last from that date until January 3, 2023—almost 21 months.[1]

By Executive Order issued May 6, 2021, the Governor set dates for the special primary election and the special general election to fill the vacancy created by Representative Hastings' death. Exec. Order No. 21-103. The special primary election will be held on November 2, 2021, and the special general election will be held on

---

[1] The primary and general elections for the next term that begins on January 3, 2023, are currently scheduled to take place on August 23 and November 8, 2022. *See* §§ 100.031, 100.061, Fla. Stat.; https://dos.myflorida.com/elections/for-voters/election-dates/.

January 11, 2022. *Id.* It is anticipated that the winner of the January 11th special election will fill the vacancy for almost 12 months.

In their First Amended Complaint, Plaintiffs argue that this timeline is not quick enough. *See generally* ECF No. 7. They specifically argue that it violates their First, Fourteenth, and Fifteenth Amendment rights, their Equal Protection rights under 42 U.S.C. § 1981, and their rights under Florida law. *E.g.*, ECF No. 7, at 1-2, 17. To remedy these perceived injuries, they ask for: (a) a judgment declaring that the Governor's discretion to schedule a special election is limited and that the timeline scheduled by him violates the constitutions and laws of the United States and the State of Florida; (b) an injunction barring the Governor from "enforcing" the timeline, "invalidating" the timeline, and "mandating" he set a new schedule that "does not exceed 153 days between the dates of vacancy and special election"; and (c) miscellaneous relief. ECF No. 7, at 17. In other words, they desire an order forcing the Governor to reschedule the special general election for some time on or before September 6, 2021—approximately four months earlier than it is currently scheduled.

## LEGAL STANDARDS

A court must grant a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) if it lacks subject-matter jurisdiction to hear a claim. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Standing is jurisdictional and is therefore properly attacked through a motion to dismiss pursuant to Rule 12(b)(1). *Id.* A court is also without subject-matter

jurisdiction to resolve disputes that present "political questions" that "defy resolution by any judicially manageable standards" or that are "definitively entrusted to other branches of the government." *Carmichael v. Kellogg, Brown & Root Servs. Inc.*, 572 F.3d 1271, 1296 (11th Cir. 2009).

A complaint must likewise be dismissed pursuant to Rule 12(b)(6) unless well-pleaded facts or reasonable inferences from those well-pleaded facts provide grounds for relief. *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004). Though a complaint need not contain "detailed factual allegations," it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

## I.     Plaintiffs' State Law and State Constitutional Claims are Barred by the Eleventh Amendment.

"The Eleventh Amendment to the Constitution bars federal courts from entertaining suits against states." *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1302 (11th Cir. 2005). Although *Ex parte Young* provides an "exception to this rule for suits against state officers . . . to end continuing violations of *federal* law," *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000) (emphasis added), the Supreme Court has disallowed causes of action contending that "a state official has violated *state* law," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). The *Pennhurst* exception exists because "[a] federal court's grant of relief against state

officials on the basis of state law . . . conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106.

A substantial portion of Plaintiffs' First Amended Complaint claims that the Governor has violated various provisions of the Florida Constitution and Florida Statutes. *E.g.*, ECF No. 7, at ¶¶ 5, 15, 34-38, 43, 49, 51, 54, 56-57, 64; *see also* ECF No. 7, at 17. In other words, Plaintiffs' suit requests that "a federal court instruct[]" a "state official[] on how to conform [his] conduct to state law," which is a request the Supreme Court has characterized as a "great[] intrusion on state sovereignty." *Pennhurst*, 465 U.S. at 106. Such a request is barred by the Eleventh Amendment. *See id.* at 121 ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."). Because "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment," *id.*, Plaintiffs' state law and state constitutional claims must be dismissed.

## II.   Plaintiffs Lack Standing.

The judicial branch is restrained by Article III of the U.S. Constitution to deciding only "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992) (quoting U.S. Const. art. III, § 2, cl. 1). To ensure that courts only hear those matters authorized by the U.S. Constitution, the Supreme Court has developed the doctrine of standing. *Id.* at 560. To establish standing to bring a case, the plaintiff must establish (1) an injury in fact that is (2) fairly traceable to the actions of the defendant and (3) likely to be redressed by a favorable decision of the court. *Id.* at

560-61. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (cleaned up). To be fairly traceable to the challenged act of the defendant, the alleged injury must be caused by the challenged act of the defendant and not be "th[e] result [of] the independent action of some third party not before the court." *Id.* To establish redressability, the plaintiff has the burden of establishing that it is " 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Id.* at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

Plaintiffs have alleged that they have sustained injuries due to violations of their federal rights under the First, Fourteenth, and Fifteenth Amendments, as well as violations of their equal protection rights under 42 U.S.C. § 1981, pursuant to 42 U.S.C. § 1983. But Plaintiffs essentially stop there. They ring these constitutional bells by invoking the titles of the Amendments, the right of Equal Protection, and the statute by which those rights are enforced, but they fail to state with requisite particularity the concrete injury they have sustained, how it was caused by the Governor fulfilling his duty to schedule a special election, or how the Court is authorized to redress their perceived injuries.

As to their injury in fact, Plaintiffs state they currently lack representation in the U.S. House of Representatives, but that is a neutral statement of fact, not an invasion of any legally protected interest. It simply does not follow that a temporary vacancy in the House pending a special election that has already been set into motion

is an invasion of a legal interest. Plaintiffs seem to be arguing that they have some legally protected interest in being without representation in the House for only some maximum number of days, which they have arbitrarily identified as 153 based on the circular argument that 153 days is the longest such a vacancy has remained in Florida prior to this point. But they don't point to any concrete source of this very specific right. The best they can do is cite to a number of broad constitutional and statutory provisions and ask the Court to squint hard through the lens of "in pari materia" and wait for the legally protected interest to appear. *See* ECF No. 7, at 8-9, 12-13 (citing U.S. Const. art. I, § 2, cl. 1 (House Composition Clause); U.S. Const. art. I, § 2, cl. 4 (House Vacancy Clause); 2 U.S.C. § 8 (House Vacancy Statute); art. I, § 1, Fla. Const. (Political Power Clause); art. IV, § 1(a), Fla. Const. (Take Care Clause); § 100.101, Fla. Stat. (Special Elections and Special Primary Elections Statute); § 100.111, Fla. Stat. (Filling Vacancy Statute)). But these constitutional and statutory provisions, read independently or together, will be searched in vain for any textual requirement that the Governor schedule an election to fill a vacancy in the House within specifically 153 days of the date of vacancy.

At its core, Plaintiffs' argument fundamentally relies on a misinterpretation of Florida law. Section 100.111(2), Florida Statutes, generally provides that "[t]he dates fixed [by the Governor for a special primary election and a special general election] shall provide a minimum of 2 weeks between each election." However, the statute allows for a waiver of the two-week minimum under certain circumstances:

> In the event a vacancy occurs in the office of state senator or member of the House of Representatives when the Legislature is in regular

legislative session, the minimum times prescribed by this subsection may be waived upon concurrence of the Governor, the Speaker of the House of Representatives, and the President of the Senate.

§ 100.111(2), Fla. Stat. Plaintiffs erroneously argue that this waiver applies to vacancies in the U.S. House of Representatives when the House is in regular session and mandates that the Governor must swiftly schedule the election to fill a vacancy in the House within 153 days; however, the waiver provision cannot be reasonably read that way. At the outset, the waiver provision has no application to a vacancy in the U.S. House of Representatives. The statute makes plain that the term "state" modifies both "senator" and "member of the House of Representatives." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: Interpretation of Legal Texts* 147 (2012) (Series-Qualifier Canon). As such, the waiver provision can only be applied to a vacancy in the Florida Senate or Florida House. This conclusion is textually buttressed by the fact that the phrase "office of state senator or member of the House of Representatives" is followed directly by the phrase "when the Legislature is in regular legislative session." The term "Legislature" necessarily refers to the Florida Legislature and not the U.S. Congress, as only two sentences later the statute distinguishes between a "session of the Legislature" and a "session of Congress." Doubly solidifying this point, the very same sentence distinguishes between "any district in the state Senate or House of Representatives" and "any congressional district." Regardless, the statute plainly provides that the two-week minimum "may" be waived by the Governor, not that it "shall" be. *See* Scalia & Garner, *Reading Law* at 112 ("Mandatory words impose a duty; permissive words grant discretion."). And

any such waiver is clearly conditioned "upon concurrence" of the Governor, the House Speaker, and the Senate President, not the Governor alone. Thus, Plaintiffs have failed to establish a legally protected interest to have a special election held within 153 days of when a vacancy arises in the U.S. House of Representatives.

Plaintiffs next claim they are being prevented from voting for and being equally represented in the U.S. House of Representatives.[2] Not so. By scheduling the special elections, the Governor has given Plaintiffs an opportunity to vote, twice, for their next Congressional Representative. Specifically, Plaintiff Dowling will presumably be able to vote on November 2nd in the special primary election and on January 11th in the special general election. A claim that the Governor has delayed Plaintiffs from voting also fails as a matter of law. To establish some delay in exercising their right to vote, Plaintiffs would have to establish that they have a right to vote on a date of their choosing—within 153 days of the vacancy in this case. But as discussed above, Plaintiffs have failed to identify a legal right to vote to fill a vacancy in the U.S. House of Representatives at a date of their own choosing. In fact, as will be discussed in greater depth below, the constitutions and laws of the United States and the State of Florida give the Governor the discretion to determine the date for holding such an election, not Plaintiffs. Therefore, Plaintiffs' claims based on their right to vote and entitlement to equal representation in Congress fail because they have not stated any injury in fact.

---

[2] It should be noted that only one of the two Plaintiffs is a natural person that can legally vote.

Plaintiffs also claim the Governor retaliated against them for exercising their free speech rights under the First Amendment to file this lawsuit. To state an injury for retaliation under the First Amendment, a plaintiff must establish: (1) that his speech was constitutionally protected; (2) that he suffered an adverse action that would deter a person of ordinary firmness from engaging in that speech; and (3) that there is a causal connection between the protected speech and the retaliatory action. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Plaintiffs fail to plead sufficient facts to satisfy the second and third elements. Their Amended Complaint asks the Court to require the Governor to set a schedule that does not exceed 153 days between the dates of vacancy and special election. However, their initial Complaint merely requested that the Court require the Governor to call a special election, so it is difficult to see how the Governor exercising his constitutional and statutory duty to schedule a special election to fill the vacancy in the 20th Congressional District caused them to suffer any adverse action that would deter an ordinary person from exercising his or her First Amendment rights. Additionally, Plaintiffs have failed to allege facts sufficient to show a causal connection between the action the Governor took and the exercise of their free speech rights. For these reasons, Plaintiffs' First Amended Complaint fails to allege a legally cognizable injury in fact, and it must be dismissed.

Second, Plaintiffs have not shown that any of their alleged injuries are fairly traceable to the Governor's actions. In fact, the Governor's actions are set to remedy Plaintiffs' alleged injuries, not cause them. Before the Governor set the date for the

special election, Plaintiffs would have had to wait until August 23 and November 8, 2022—the next regularly scheduled primary and general elections—to vote for representation in the 20th Congressional District, and they would have had to wait until January 3, 2023—the first day of the 118th Congress—to be represented in the U.S. House of Representatives. The Governor's actions have moved both of these timetables forward, giving Plaintiffs the ability to vote for representation and be represented sooner than they otherwise would have. Moreover, as to their free speech rights, Plaintiffs are free to speak about any issues relating to the 20th Congressional District now just as they were able to before the special elections were scheduled. Their First Amendment rights are unaffected. Thus, to the degree that any of Plaintiffs' alleged injuries constitute injuries in fact, they are not fairly traceable to the Governor's actions.

Finally, Plaintiffs' alleged injuries are also not redressable by the Court. The plain text of the U.S. Constitution, the U.S. Code, the Florida Constitution, and the Florida Statutes clearly and unambiguously give the Governor discretion to decide the timing of the special election to fill the vacancy in the 20th Congressional District.

Article I, section 2, clause 4 of the U.S. Constitution—the House Vacancy Clause—provides in full: "When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies." The House Vacancy Clause provides the Governor with discretion to decide when to set a vacancy election because it "does not specify the amount of time that may permissibly elapse between the happening of a vacancy and the vacancy

election." *Tedards v. Ducey*, 951 F.3d 1041, 1054 (9th Cir.), *cert. denied*, 141 S. Ct. 952 (2020). However, its text is not boundless; it necessarily cabins the Governor's discretion by requiring the vacancy election to be scheduled to occur prior to the beginning of the next term of office for the U.S. House of Representatives so that the "vacanc[y]" shall actually be "fill[ed]." *See* U.S. Const. art. I, § 2, cl. 4; *see also Tedards*, 951 F.3d at 1054 ("Given the two-year term of a Representative, . . . we can deduce that any vacancy election must occur within a timeframe shorter than two years, and generally earlier than the next congressional election."). *But see ACLU v. Taft*, 385 F.3d 641, 649 (6th Cir. 2004) (acknowledging the Governor may be excused from issuing the writ required by the House Vacancy Clause if "the time remaining in the congressional term is truly de minimis"); *Jackson v. Ogilvie*, 426 F.2d 1333, 1336 (7th Cir. 1970) (same).

Article I, section 4, clause 1 of the U.S. Constitution—the Elections Clause—broadly states that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations." Congress has expressly declined to preempt the authority of state legislatures to determine the timing of special elections for vacancies in the U.S. House of Representatives, except for "extraordinary circumstances" not present here. 2 U.S.C. § 8(a), (b)(1)-(2), (4)(A); *see id.* § 8(b) (providing time limits for special elections when the Speaker of the House announces there are more than 100 vacancies).

Article IV, section 1(a) of the Florida Constitution provides that "[t]he supreme executive power shall be vested in [the] governor" and that "[t]he governor shall take care that the laws be faithfully executed." The Florida Constitution is silent on the matter of filling a vacancy in the U.S. House of Representatives.

Article III, section 1 of the Florida Constitution vests "[t]he legislative power" of the State in the Legislature. The state statute implementing the House Vacancy Clause and the Elections Clause provides no maximum time limit for the Governor to schedule a special election for a vacancy in the U.S. House of Representatives. *See* § 100.111, Fla. Stat. To the contrary, it gives the Governor discretion to set the date for the special election after consulting with Florida's Secretary of State and considering factors such as any upcoming elections in the jurisdiction where the special election will be held. § 100.111(2), Fla. Stat.; *see also* § 100.141(1), Fla. Stat.[3]

Courts have suggested that the outer limit of the Governor's discretion would be where the time remaining in the two-year term of a Representative is "de minimis." *See, e.g.*, *Taft*, 385 F.3d at 648-49 (holding that time of possible service in the House from November 5, 2002, to January 3, 2003, "cannot be considered de minimis"); *Jackson*, 426 F.2d at 1337 ("We are not prepared to say as a matter of law that representation from the time the results of the November 3 election will be determined to January 3, 1971, is de minimis."). It appears that none have ever

---

[3] Florida law cabins the Governor's discretion in some respects, ensuring "a minimum of 2 weeks between" the special primary election and the special general election, and requiring the dates of both elections be fixed on "specific days certain." § 100.111(2), Fla. Stat.

pronounced a time constraint that would require a special election earlier than the next general election, *see Tedards*, 951 F.3d at 1054 n.21, which is to be expected given the plain and unambiguous text of the House Vacancy and Election Clauses, read together, do not give the judiciary the authority to impose such a requirement. Rather, the text of the Constitution gives the Governor the duty to call the election and the Congress and state legislature the authority to determine the permissible dates for the election. The Constitution gives these duties to the nonjudicial branches of government with no indication of a judicially manageable standard for the judiciary to oversee the process, save the logical limitation that an election must be scheduled to occur prior to the beginning of the next term of office so that the vacancy shall actually be filled, which will happen under the current timeline.

Furthermore, to implement Plaintiffs' arbitrary special election date of September 6, 2021—the date that falls 153 days after Representative Hastings' death—the Court would have to act contrary to the plain language of 2 U.S.C. § 8(a) and section 100.111(2), Florida Statutes. Plaintiffs have not challenged the validity of those provisions, which collectively give the authority to set the date of this election to the Governor, not the federal judiciary, so this Court must presume they are constitutional and valid. *See Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1545 (11th Cir. 1994). Thus, the Court cannot grant Plaintiffs' desired remedy without violating the plain and unambiguous meaning of constitutional and statutory text.

In any event, at this point a September 6 special election date appears to be improbable—if not impossible—due to the various statutory deadlines for elections in the Florida Statutes. After the Governor schedules a special primary election and special general election, several things must happen before the elections can take place. First, the Department of State must set the dates for qualifying, including by the petition method. § 100.111(2)(a), (c), Fla. Stat. In setting these dates, the Department is "governed by . . . practical time limitations," which include the fact that if a candidate wishes to qualify by petition, he or she must obtain signatures from 0.25% of the registered voters in that district, and the Supervisors of Elections must have time to verify those petitions. §§ 100.111(2)(c), 99.095(2)(a), Fla. Stat. Next, the Supervisors of Elections must twice advertise the elections in newspapers of general circulation. § 100.141(3), Fla. Stat. Both advertisements must be at least 10 days before the beginning of the qualifying period for the special primary election. § 100.141(3), Fla. Stat. After the qualifying period closes, the Department must certify the qualified candidates, § 99.061(6), Fla. Stat., and the Supervisors of Elections must prepare and print the ballots. Ballots for each absent uniformed services voter and each overseas voter that has requested a ballot must be sent out 45 days before the election. § 101.62(4)(a), Fla. Stat.; 52 USC § 20302(a)(8). After the special primary, the county canvassing boards and the Canvassing Commission must return a result "as speed[ily] . . . as time will permit." § 100.111(2)(e), Fla. Stat. In a typical election, they have 7 and 9 days, respectively. §§ 102.111(2), 102.112(2), Fla.

Stat. After the results for the primary are certified, the process must start over again with the printing of the ballots for the special general election.[4]

For the foregoing reasons, the Court cannot grant Plaintiffs the relief they desire, and they therefore lack standing. Moreover, because Plaintiffs have failed to establish any of the three elements of standing, the Court should dismiss their First Amended Complaint under Rule 12(b)(1).

## III.   Plaintiffs Ask This Court to Decide a Nonjusticiable Question.

Whether a federal court can or should decide a dispute is a threshold question. *See Renne v. Geary*, 501 U.S. 312, 316 (1991) ("Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so."). Federal courts presume they "lack jurisdiction unless the contrary appears affirmatively from the record." *Id.* (cleaned up). One question a court must ask when determining whether it should decide a matter is whether the dispute constitutes a question for another branch of government. *Rucho v. Common Cause*, 139 S. Ct. 2484, 2494 (2019) ("Sometimes, . . . 'the law is that the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the political branches or involves no judicially enforceable rights.' " (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004))). "The nonjusticiability of a political question is

---

[4] Much of the above timeline is triggered by the notice of special election issued by the Department of State. *See* § 100.141(2), Fla. Stat. Among other things, the notice sets qualifying dates, petition thresholds, and petition due dates. § 100.141(2), Fla. Stat.; *see also* §§ 99.061, 99.095, Fla. Stat. Importantly, candidates will rely on the Governor's dates for special election in conjunction with the Department's notice to start making decisions regarding resign to run, when and how to collect petitions, and the like. *See, e.g.*, § 99.012, Fla. Stat.

primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962). A nonjusticiable question can be recognized by, among other things, "a textually demonstrable constitutional commitment of the issue to a coordinate political department[] or a lack of judicially discoverable and manageable standards for resolving it." *Id.* at 217.

As discussed in greater depth above, the U.S. Constitution directs the Governor to issue a writ of election to fill a vacancy in the U.S. House of Representatives. U.S. Const. art. I, § 2, cl. 4. Congress and the state legislature are to determine when the special election should occur. U.S. Const. art. I, § 4, cl. 1. Congress has expressly allowed the state legislatures to determine the timing of these special elections, 2 U.S.C. § 8(a), and the Florida Legislature has given the Governor discretion to determine when the special election should occur, § 100.111(2), Fla. Stat. Thus, the U.S. Constitution has definitively left the timing of such special elections to the legislative and executive branches of government. *See Baker*, 369 U.S. at 217.

In any event, the Court should refrain from attempting to answer the question before it because there is no judicially discoverable or manageable standard for determining when special elections for vacancies in the U.S. House of Representatives should be scheduled to occur, outside of the fact that they should, if at all possible, be scheduled to occur before the vacant term expires. *See Baker*, 369 U.S. at 217. Any such judicially pronounced date, such as the Plaintiffs' suggested 153 days, would arbitrarily impose a date certain not required by the plain text of the constitutions and laws of the United States and the State of Florida. For these

reasons, Plaintiffs' First Amended Complaint presents a nonjusticiable issue, and therefore the Court must dismiss the Complaint for failing to state a claim upon which relief can be granted.

Plaintiffs may argue that the issues they have raised are justiciable under *Jackson*. That claim would be mistaken. In *Jackson*, the Seventh Circuit Court of Appeals decided that a claim against the Governor of Illinois for deciding *not* to hold a special election to fill an Illinois seat in the U.S. House of Representatives because the person elected would serve for less than a year was not a nonjusticiable question. *Jackson*, 426 F.2d at 1335-36; *see also ACLU*, 385 F.3d at 649 (acknowledging the California Governor may be relieved of his duty under the House Vacancy Clause to schedule an election for a vacant seat in the House where "the time remaining in the congressional term is truly de minimis"); *Fox v. Patterson*, 715 F. Supp. 2d 431, 442 (W.D.N.Y. 2010) (deciding that the Governor of New York had the duty to "proclaim a special election" but declaring that the Governor's discretion to decide the date of the election was bridled only by the date on which the next regularly scheduled general election for the given vacancy would have otherwise occurred). In *Jackson*, the court was asked to decide whether the House Vacancy Clause mandated that the Governor issue a writ of election. *Jackson*, 426 F.2d at 1336. That was a question of constitutional interpretation that fell squarely within the purview of the judiciary. The question presented to the Court here is very different. Here, there is no debate as to whether the special election must be held. In fact, the Governor has already scheduled it to occur on January 11, 2022—well in advance of the next general

election, which is scheduled for November 8, 2022. Nor is there any challenge as to whether the special election must be held prior to the next general election, or whether the nearly one year that will remain in the term is de minimis. Rather, Plaintiffs here are asking the court to decide *when* the special election must be held. As explained above, the authority to make that decision is vested in the legislative and executive branches of government, and Plaintiffs have not given the court a sufficient reason to answer their nonjusticiable question.

## IV.   Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must present the court with "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Plaintiffs have failed to meet this standard. Their First Amended Complaint is replete with legal conclusions and factual assertions bereft of any plausible connection to one another.  They allege that the Governor's actions have violated their Equal Protection Rights under 42 U.S.C. § 1981, as well as their First, Fourteenth, and Fifteenth Amendment rights, but they leave it to the Court to surmise how the Governor setting a date for a special election—almost ten months prior to the next general election and almost one year prior to the next session of Congress—somehow infringes on those rights. In other words, it is difficult to see how Plaintiffs' claims,

given the facts as pled, are even "conceivable," much less "plausible." *Twombly*, 550

U.S. at 570. Therefore, the Court should dismiss their Amended Complaint.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' First Amended

Complaint with prejudice.

Respectfully submitted this 2nd day of June, 2021.

**RON DESANTIS**
**GOVERNOR**

*/s/ Joshua E. Pratt*
JAMES W. UTHMEIER (FBN 113156)*
General Counsel
JOSHUA E. PRATT (FBN 119347)
Deputy General Counsel
ANDREW B. KING (FBN 124759)
Assistant General Counsel
EMILY C. PERCIVAL (FBN 119313)*
Attorney to the Governor
EXECUTIVE OFFICE OF THE GOVERNOR
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL 32399
Phone: (850) 717-9310
Facsimile: (850) 488-9810
James.Uthmeier@eog.myflorida.com
Joshua.Pratt@eog.myflorida.com
Andrew.King@eog.myflorida.com
Emily.Percival@laspbs.state.fl.us
Gov.Legal@eog.myflorida.com

*Counsel for Governor Ron DeSantis*

*motion to appear pro hac vice pending

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on this 2nd day of June, 2021.

/s/ Joshua E. Pratt
Deputy General Counsel