**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 21-80796-CIV-CANNON**

**ELVIN DOWLING** and
**PEOPLE FOR ELVIN DOWLING**,

       Plaintiffs,

v.

**RONALD DION DESANTIS**,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss ("Motion") [ECF No. 13]. The Court has considered the Motion, Plaintiffs' Response in Opposition [ECF No. 17], and is otherwise fully advised.[1] For the reasons set forth below, the Motion [ECF No. 13] is **GRANTED**.

## FACTUAL & PROCEDURAL BACKGROUND

This case involves a dispute over the timing of the special election to fill a Congressional vacancy. On April 6, 2021, Congressman Alcee Hastings passed away, leaving a vacancy in Florida's 20th Congressional District for the U.S. House of Representatives [ECF No. 7 ¶¶ 1, 3]. On April 29, 2021, Plaintiffs Elvin Dowling and People for Elvin Dowling ("People for Dowling") initiated this lawsuit against Governor Ron DeSantis, seeking declaratory and injunctive relief to compel the Governor to schedule a special election to fill the vacancy [ECF No. 1 ¶ 43]. Plaintiffs allege that Dowling is a citizen who resides in Florida's 20th Congressional District and is

---

[1] Defendant did not file a Reply in Support of the Motion.

registered to vote in that district, and that People for Dowling is a political advocacy committee headquartered and operating in the 20th District [ECF No. 7 ¶¶ 10, 13].  On May 4, 2021, shortly after Plaintiffs initiated suit, Governor DeSantis issued Executive Order No. 21-103 (the "Executive Order"), setting a special election to fill the vacancy in the 20th District created by Representative Hasting's passing [ECF No. 7 ¶ 42; ECF No. 13 p. 2].  The Executive Order set the special primary election to take place on November 2, 2021 followed by the special general election on January 11, 2022 [ECF No. 7 ¶ 43; ECF No. 13 p. 2].

Plaintiffs then filed an Amended Complaint, this time alleging that the special election timeline set by the Executive Order is unreasonably dilatory and violates Plaintiffs' constitutional and statutory right to vote and to representation [ECF No. 7 ¶¶ 49–50, 56].  The Amended Complaint points out that the 280-day delay between Congressman Hasting's passing and the special general election is substantially longer than the average time to fill House vacancies in Florida, which Plaintiffs allege is 127 days, or even the longest Florida House vacancy to date, which Plaintiffs allege is 153 days [ECF No. 7 ¶¶ 47–49].  On the basis of these alleged delays in filling the vacancy, in a majority-African American district, Plaintiffs claim a violation of their right to vote as provided in the Equal Protection Clause of the Fourteenth Amendment and the Fifteenth Amendment [ECF No. 7 ¶¶ 61–62].  Plaintiffs further allege that the alleged delay violates their First Amendment rights to engage in political speech [ECF No. 7 ¶ 62].

The Amended Complaint asserts the following three claims against Governor DeSantis, seeking various forms of declaratory and injunctive relief:

- Count One: Declaratory Judgment that the Governor's Discretion to Schedule Special Primaries and Elections is Limited;

- Count Two: Declaratory Judgment that Governor DeSantis's Special Election Timeline is an Abuse of his Discretion and Violates Constitutional and Statutory Mandates, and Request for Injunctive Relief; and

- Count Three: Declaratory Judgment that Governor DeSantis's Special Election Timeline Constitutes Retaliation Against Plaintiffs in Violation of Plaintiffs' First Amendment Protections and Governor DeSantis's Legal Obligations, and Request for Injunctive Relief [ECF No. 7 pp. 12–16].

On June 2, 2021, Defendant filed the instant Motion to Dismiss [ECF No. 13].  The Motion seeks dismissal all claims, asserting the following defenses: state sovereign immunity under the Eleventh Amendment, lack of Article III standing, political question doctrine, and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) [ECF No. 13 pp. 4–20].  The Motion is ripe for adjudication.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## PARTIES' ARGUMENTS

Governor DeSantis argues that Plaintiffs' claims should be dismissed to the extent they rely on Florida state law because such state law claims against state officials are barred by the Eleventh Amendment [ECF No. 13 pp. 4–5].  The Governor also argues that Plaintiffs lack constitutional standing for three separate reasons: (1) Plaintiffs' have not properly alleged any "injury in fact," because they have no legally protected interest in filling the vacancy within a certain number of days; (2) Plaintiffs have not shown that their alleged injuries are "fairly traceable" to the Governor, because he did not cause or create the vacancy; and (3)  Plaintiffs'

alleged injuries are not "redressable" by the Court, because any such redress would encroach upon the Governor's legal discretion, and Plaintiffs' preferred dates for the special election are impracticable [ECF No. 13 pp. 5–16]. The Governor further argues that Plaintiffs' claims should be dismissed because they are nonjusticiable under the political question doctrine [ECF No. 16 pp. 16–19]. And then finally, the Governor contends that Plaintiffs' claims should be dismissed for failure to state a claim under Rule 12(b)(6) because they lack sufficient factual allegations to state a plausible claim under any of the constitutional provisions cited in the Amended Complaint [ECF No. 13 pp. 19–20].

Plaintiffs acknowledge that the Governor has some discretion over the timing of special elections but argue that such discretion is limited in this case because the timing of the special election purportedly violates Plaintiffs' political speech and equal protection rights under the First, Fourteenth and Fifteenth Amendments [ECF No. 17 pp. 1–3]. To this point, Plaintiffs allege that Florida's 20th Congressional District is majority-African American and historically votes democratic, and also that filling the vacancy is especially important now because the U.S. Congress is considering legislation that is critical to African Americans and implicates Governor DeSantis's priorities in Florida [ECF No. 7 ¶¶ 19–30; ECF No. 17 p. 3]. Plaintiffs also assert that they have standing and that this case does not present a political question [ECF No. 17 p. 5].

## **DISCUSSION**

Although Plaintiffs' claims proceed under differing theories of injury and seek differing forms of relief, they all reduce to a single essential question before the Court: whether Governor DeSantis exceeded his discretion, under federal and Florida law, by issuing an executive order that set the special election to take place 280 days after the vacancy was created. The Court first addresses the threshold issue of standing to sue before turning to the merits of Plaintiffs' claims.

### Article III Standing

Article III of the U.S. Constitution constrains federal courts to decide only "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992) (quoting U.S. Const. art. III, § 2, cl. 1). To satisfy the standing requirements derived from Article III,

> a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000) (quoting *Lujan*, 504 U.S. at 560–61).

The Court finds that Plaintiffs' allegations are sufficient to satisfy the requirements of Article III standing. Plaintiffs have alleged that Dowling is registered to vote in Florida's 20th Congressional District, and that he plans to run in the special election and has submitted an application and paid the qualifying fee [ECF No. 7 ¶¶ 10–12]. People for Dowling is a political advocacy committee headquartered and operating in the 20th District that advocates for Dowling's candidacy in the special election [ECF No. 7 ¶ 13]. On these allegations, Plaintiffs claim they "are suffering actual injury, as they are without representation in the House and are threatened with the imminent denial of their right to vote" [ECF No. 7 ¶ 18]. Plaintiffs also allege that their injuries are fairly traceable to Governor DeSantis's conduct based on his Executive Order, which set the dates for the special election [ECF No. 7 ¶¶ 18 ("These injuries are caused by Gov. DeSantis's actions and inactions."); ECF No. 7 ¶¶ 42–43; *see* ECF No. 7 ¶¶ 16–17].

Other courts confronting House vacancy cases against governors have found similar allegations sufficient to establish Article III standing. *See Am. Civ. Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 646 (6th Cir. 2004); *see also Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175,

198 (E.D.N.Y. 2015) ("Plaintiffs' injury is real and substantial: They do not have representation in the House of Representatives. Nothing is 'speculative' or 'hypothetical' about this disenfranchisement."). These allegations sufficiently meet constitutional standing requirements.[2]

### *Merits*

The Court now turns to the issue of whether the special election timing falls within the scope of the Governor's discretion. Article I, § 2 of the United States Constitution provides that "[w]hen vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies." U.S. Const. art. I, § 2, cl. 4 (the "House Vacancy Clause"). The Constitution adds, in Article I, § 4, that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations . . . ." U.S. Const. art. I, § 4, cl. 1 (the "Elections Clause"). Federal law under Title 2 of the U.S. Code provides that, except in "extraordinary circumstances" not present here:

> the time for holding elections in any State, District, or Territory for a Representative or Delegate to fill a vacancy, whether such vacancy is caused by a failure to elect at the time prescribed by law, or by the death, resignation, or incapacity of a person elected, may be prescribed by the laws of the several States and Territories respectively.

2 U.S.C. § 8(a).

Florida law, in turn, provides that "[w]henever there is a vacancy for which a special election is required," including vacancies in the House of Representatives of Congress, "the

---

[2] The Court also concludes, consistent with other judicial decisions, that although the special primary election already took place on November 2, 2021, and the special general election is fast approaching on January 11, 2022, the controversy between the parties, including Plaintiffs' claim for declaratory relief, is not moot and can fairly be described as the type of problem that is capable of repetition but evading review. *See Moore v. Ogilvie*, 394 U.S. 814, 816 (1969); *Am. Civ. Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 646 (6th Cir. 2004) (citing *Jackson v. Ogilvie*, 426 F.2d 1333, 1337 (7th Cir. 1970)).

Governor, after consultation with the Secretary of State, shall fix the dates of a special primary election and a special election." Fla. Stat. § 100.111(2); Fla. Stat. § 100.101(4); *see also* Fla. Stat. § 100.141(1) ("Whenever a special election is required to fill any vacancy in office, the Governor, after consultation with the Secretary of State, shall issue an order declaring on what day the election shall be held and deliver the order to the Department of State.").

In *Am. Civ. Liberties Union of Ohio, Inc. v. Taft*, the Sixth Circuit addressed the question of whether governors are required to call special elections as all. 385 F.3d 641 (6th Cir. 2004). The court determined that the House Vacancy Clause of the U.S. Constitution requires governors to call a special election prior to the next general election, so long as the remaining time between the creation of the vacancy and the next general election is not *de minimus*. *Id.* at 649. Importantly, however, the court in *Taft* also recognized that the Constitution gives states considerable deference and discretion "to determine the 'Times, Places, and Manner' of holding such elections, and that the states have valid interests in ensuring fair and reliable elections." *Id.* at 650–51 (quoting U.S. Const., art. I, § 4, cl. 1); *see also Jackson v. Ogilvie*, 426 F.2d 1333, 1338 (7th Cir. 1970) (holding that governors' obligation to issue writs of election under the House Vacancy Clause is mandatory but noting that any relief "should be framed in a manner which will preserve [the governor's] latitude and discretion in these matters"). "[N]either [*Taft* nor *Jackson*] pronounced a time constraint that would require a special election earlier than the next general election." *Tedards v. Ducey*, 951 F.3d 1041, 1054 n.21 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 952 (2020).

"Thus, although the duty to call a special election to fill a vacancy in the House is mandatory, both the Framers of the Constitution and Congress have clearly indicated their intent to leave decisions concerning the timing of such elections to the individual states." *Fox v. Paterson*, 715 F. Supp. 2d 431, 437 (W.D.N.Y. 2010). Courts repeatedly have held that months-

long delays in special election timing do not violate the Constitution. *See, e.g.*, *Rhodes v. Snyder*, 302 F. Supp. 3d 905, 914 (E.D. Mich. 2018) (finding that the Governor of Michigan acted within his discretion in deciding to hold a congressional special election eleven months after the creation of the vacancy, in conjunction with the next general election); *see also Fox*, 715 F. Supp. 2d. at 440 (finding that the Governor of New York acted within his discretion when delaying a special election until November for a vacancy that occurred in March of that year); *Mason v. Casey*, No. 91-5728, 1991 WL 185243, at *3 (E.D. Pa. Sept. 18, 1991) (dismissing claims challenging the constitutionality of a state statute providing that a special election to fill a congressional vacancy could not be held until at least sixty days after issuance of the writ).

In this case, the Court finds that, like the governors in *Rhodes*, *Fox*, and *Mason*, Governor DeSantis has acted within the discretion conferred upon him by the Constitution.[3] As the Governor concedes, such discretion is not boundless because it remains limited by the next general election [ECF No. 13 p. 12]. *See Tedards*, 951 F.3d at 1054 ("The House Vacancy Clause does not specify the amount of time that may permissibly elapse between the happening of a vacancy and the vacancy election. Given the two-year term of a Representative, however, we can deduce that any vacancy election must occur within a timeframe shorter than two years, and generally earlier than the next congressional election."). Here, the special election at issue is set for January 11, 2022, ten months before the next general election will take place in November 2022. Moreover, the 280-day period between the special election on January 11, 2022, and the vacancy on April 6, 2021, is consistent with the timing that other courts have found permissible. *See Rhodes*, 302 F. Supp. 3d at 914 (336 days); *Fox*, 715 F. Supp. 2d. at 440 (238 days). Contrary to Plaintiffs' argument based

---

[3] The Court declines Defendant's invitation to find this matter nonjusticiable under the political question doctrine [ECF No. 13 pp. 16–19].

CASE NO. 21-80796-CIV-CANNON

on the timing of previous special elections in Florida, the Court finds that Florida law does not require that special elections be held within 153 days of vacancy; rather, Florida law commits special election timing to the Governor in consultation with the Secretary of State. *See* Fla. Stat. § 100.111(2); Fla. Stat. § 100.141(1). Accordingly, because Governor DeSantis's Executive Order setting the special election for January 11, 2022, did not exceed his discretion under the Constitution and Florida law, Plaintiffs' claims fail,[4] and dismissal is warranted.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [ECF No. 13] is **GRANTED**.

2. Plaintiffs' Amended Complaint [ECF No. 7] is **DISMISSED WITH PREJUDICE**.[5]

3. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 22nd day of December 2021.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[4] To the extent Plaintiffs are alleging racial discrimination, they have not alleged facts plausibly demonstrating intentional discrimination, warranting dismissal for failure to state a claim. *See Rhodes*, 302 F. Supp. 3d at 914 (dismissing claims that a governor's delayed timing in setting a Congressional special election was racially discriminatory, where plaintiffs did not sufficiently allege a racially discriminatory purpose).

[5] No amendment is warranted because any amendment would be futile. *See generally Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

9